May it please the court, my name is Thomas Diggins and I represent Mr. Robert Little. We are asking your honors to reverse and vacate the conviction because the evidence was insufficient. Mr. Little did not willfully fail to remain within the extended limits of his confinement and Mr. Little did not willfully fail to return within the time prescribed or in this case to arrive at the halfway house in Rapid City. The government did not prove any of those things at trial. This furlough agreement provided that the trip from FCI Oxford in Wisconsin to the halfway house in Rapid City would take approximately 20 hours. Counsel, are you arguing instructional error in addition to insufficiency or is this just an insufficiency case? Your honor, we are arguing just sufficiency. We made a sufficiency argument in the district court and we're making that same argument before this court. Thank you. The testimony from the witness who worked for the bus company at trial was that Mr. Little on the first bus from Wisconsin Dells to Minneapolis, that bus arrived late, he arrived late because of blizzard and very cold conditions. So this delay cannot be said to be willful on Mr. Little's part. Just last year, this court reversed a wire fraud conviction in the Hagen case because of drought conditions, the contract couldn't be performed and I submit this is similar because of weather conditions, Mr. Little could not get there on the 6th as scheduled and that had nothing to do with his willfulness. The bus company official testified that the first opportunity for Mr. Little to arrive by bus in Rapid City got him there on the 8th, not the 6th, at 645 p.m. The furlough agreement, which is addendum two on page one in the lower left, sets forth the travel schedule and it gives Mr. Little 15 minutes to travel from the bus station to the halfway house. So he should have been there at 7. When he was logged in at the halfway house at 739, the government did not call the employee from the halfway house who received Mr. Little. So we don't know exactly when he got there. We know he was logged in at 739. We also don't know whether taxis were immediately available when the bus arrived. We don't know whether Mr. Little had money for a taxi. And also Mr. Zills from the BOP from Oxford, the case manager, testified that inmates are given little leeway when it comes to the scheduling of these furloughs. He did nothing. Counsel, what does the record say about whether Mr. Little had a cell phone with him when he left Wisconsin for South Dakota? Your Honor, the record is absent on that. There was no evidence that Mr. Little had a phone. So the only evidence that I see in the record of willfulness, potentially, is the lack of a phone call. I believe the furlough agreement required him to phone in if there was any problem and there was no phone call. Could you address that? Yes. Again, there is no evidence that Mr. Little had a phone, so he would have had to borrow a phone. But in addition, I would argue that the failure to make a phone call, although it could be considered a violation of the furlough agreement, does not amount to escape and does not show If we knew he had a phone and he didn't call, I think that would show willfulness in arriving late, not notifying. But the testimony from Mr. Zills, as I said, offering a little leeway to inmates, in addition to that, the evidence showed that the BOP did not put Mr. Little on escape status for over 12 hours after he was scheduled to arrive on the 6th. So it was the 7th at 10 a.m. that they said, you're on escape status. I think that helps us define what a little leeway is. Well, I don't understand how that matters. The fact that it took the BOP a little while to put him on status doesn't mean that the conduct was willful or was not willful. I guess I don't see the connection between the two. Your Honor, the only point I'm trying to make there is that the BOP official said inmates get a little leeway. We don't know what that means, so that's my attempt to define what it might mean. But I mean, he was two days late without a phone call, right? I mean, it could have been the failure to call. If we get to willfulness, I mean, it could have been in the intervening two days, right? Not the short amount of time at the end where the BOP gives leeway. I believe that's correct. I don't think we can say that the weather conditions were willful on Mr. Little's part, but the government has argued that his failure to call shows willfulness. But I would counter that his lack of the means to call defeats that. And on this record, I would submit there is not sufficient evidence to show that he willfully failed to arrive at the designated time. And so the only way for the government to prove that he violated the statute is to show that he failed to remain within the extended limits of his confinement. And such limits are clearly meant to apply to the geographic bounds of the furlough agreement. The reference I've made to that agreement, the lower left-hand corner, there was undisputed, unequivocal evidence at trial from Mr. Zills that that travel schedule is the extended limits of his confinement. And further, if you look at the agreement in its entirety, you'll see there's one subsection that says, if you fail to arrive on time, you could be charged with escape. But you could be subject to other criminal prosecution that's not escape. And you could be subject to institutional disciplinary action for violating the terms. So contrary to what the government argued at trial, I think it's clear to the BOP that not any violation of the agreement amounts to escape. And again, excuse me, we have a separation of powers problem here because the courts get to define what a statute means. The BOP does not. The government does not. It's up to the court. We ask the district court to do that. We're asking this court also to define what is extended limits of confinement. What does that refer to? And I submit it is geographic. We have time and place. When you're on a furlough, you have to get there in a certain time. And there are certain places you cannot go. So under that reading of the statute, the failure to make a phone call has nothing to do with where you are or how long it takes you. And the statute says nothing about making a phone call. So at best, the statute is ambiguous as to whether a phone call is required. And because of that ambiguity, I would argue that the rule of lenity should apply and that the ambiguity should be decided in Mr. Little's favor. If this court were to rule that failure to make a phone call amounts to escape, then I think the statute would be subject to a constitutional challenge as being void for vagueness. Because again, it says nothing about a call. And if Congress wanted the failure to make a call when you're delayed to amount to escape, they should have said so in the statute. The record before us on the geography, where Mr. Little was, there is no evidence that he went outside the travel schedule as set forth on page one of addendum two. There's no evidence that he wasn't on the buses. There's no evidence that he was. But again, the government has the burden. So they didn't show from any testimony, any exhibits, or the stipulation that Mr. Little went outside of his extended limits of confinement. Because of that, there is insufficient evidence to convict him under that subsection of the statute. Counsel, does willfulness apply to both elements? I believe it does. When you read the statute, Your Honor, the word willful is the second word in the statute. But it's clear that these two ways of proving a violation are in the disjunctive. And in my reading, it's clear that willfulness applies to both the failure to remain within the extended limits and the failure to return within the time prescribed. Or as the government pointed out in its brief, the Kelly case, flexibility of proof. We're not talking about failure to return. We're talking about failure to get there in the first place. But I think that is the extent of how Kelly is helpful. Flexibility of proof. Here we have failure of proof. Because again, there's no evidence that Mr. Little willfully failed to arrive at the designated time or willfully failed to remain within the extended limits. This court does have an instruction on willfully. It's 7.02. And the committee comments say that the word willfully not be used in jury instructions. And it wasn't in this case. But it goes on to say where the word willfully does appear in the statute, in most cases it can be replaced with the words voluntarily and intentionally. So when we consider this court's instruction to divide. Well, it's really not this court's instruction. It's a patterned committee's instruction that's created by district judges. And this court has said repeatedly that they do not have force of law, although they are persuasive. Your Honor, I apologize. That is correct. And I point that out because I think in ruling on this case, it is important to consider what does willfully mean. And Mr. Little did not testify at trial. He was not interviewed. There was no testimony coming through law enforcement as to what he did or where he went. And again, he has no burden of proof. The government had that. And so I submit that he did not willfully fail to get there on time. He did not willfully fail to remain in the extended limits. The evidence is insufficient. So if the government had proven he had a phone, would that have been sufficient for the conviction here? Your Honor, I believe that would go to willfulness. So hypothetically, if there was evidence he had a phone and he failed to call, we still have the fact that weather prevented him from getting there until the 8th. But he could have let FCI Oxford or the cab know that he was stuck. There's no evidence, by the way, that either of those  to see whether weather delayed the buses. But going back to what the statute says, what does it take to meet this statute? And there's no mention of a phone call. And to me, reading the furlough agreement, it's clear that certain things subject someone to disciplinary action. Other things subject someone to criminal prosecution. But it's specific on what subjects want to escape. I mean, if an inmate is at a stopover and commits theft, they're subject to prosecution. But if they commit theft from a convenience store or something, but that's not escape. And I would submit that the failure to make a phone call, I can't think of any situation in which failing to call is criminal. And I submit that it is not criminal in this case. It should be considered a violation of the furlough agreement at most that subjects Mr. Little to disciplinary action. But it should not be considered criminal. And again, if Congress wanted that to constitute escape, they should have been explicit on that point. So Your Honors, again, I'm asking you to reverse and vacate the conviction because there was insufficient evidence to convict Mr. Little under either of these sections of 4082. And if there are no further questions, I would reserve the remainder of my time for rebuttal. Thank you. Mr. Kelderman, when you're ready. May it please the court and counsel, I'm Eric Kelderman. I represent the United States in this matter. The defendant in this case, Robert Little, was not someone who was just able to do what he wanted. He was a federal inmate. He was going to a halfway house. He didn't have a right to that. It was a privilege. The Bureau of Prisons allows for inmates, of course, to finish their terms of imprisonment at halfway houses. And so what we have here is we have a federal inmate, a federal inmate the entire time, a federal inmate whose whereabouts were unknown for essentially two days. The Bureau of Prisons has a right to know where they're going to be. And that's why there are conditions that are placed on a defendant. Is the government's position that any of the terms of the furlough constitutes escape? The conditions that are laid out in the understanding section, Your Honor, the understanding section on the first page of the furlough agreement lays out that the defendant has to be within a certain area. He has to arrive at a certain time. He has to follow a certain schedule. And essentially here in this case, it was that he had to go by bus. He may well have, there was no evidence that the defendant left the route from Oxford in Wisconsin, the Oxford FCI, to the community alternatives of the Black Hills facility. Where he went from the straight path from one to the other, there was no evidence of it because the defendant was gone, because he was absent. And so what we have is a situation where he was in direct violation of the conditions that were laid out in the furlough agreement. So is the argument then that the furlough agreement is incorporated into the extended limits of confinement? Is that just making sure I'm following? The furlough agreement essentially defined the extended limits of his confinement. The extended limits of confinement has to be something that the Bureau of Prisons sets because they're the ones that confine inmates. And so his confinement had conditions. You may be, you go from this facility to this facility along this route using this means of travel, and you arrive at this time. Counsel, isn't there a difference, though, between violating the furlough agreement on the one hand and violating the escape statute on the other because of the willfulness component of the statute? Indeed, Your Honor. I would agree with that. But the escape statute, Section 751, and also Section 4082 of Title 18, particularly Section 4082, makes it a crime for a prisoner willfully to fail to remain within the extended limits of confinement or to return to the place prescribed by the Bureau of Prisons. Here, we have a situation where the defendant, I don't believe that there's any disagreement about this, he did not arrive at the facility at the time prescribed. Right, and that leads right into a question I had. And that's on page 18 of your brief, where the government says, because Little failed to arrive at the facility on time, his conduct met the second part of the instruction that he willfully failed to arrive. Seems to me that that's a non sequitur, that because he was late, he was willful. He was late, and if I wrote it incorrectly, I'll try to clarify here. He was late by all accounts. He was late by two days. His willfulness was shown by the fact that he did not make the phone call. His willfulness is demonstrated by his lack of following the directions that were given when the extended limits of his confinement were provided to him, were given to him, telling him, here is how you must travel. But here's the issue, though, that as I see it. Now, if you look at what willful means, willful means in the ordinary course, voluntary or intentional. Now, we have some cases that talk about under certain rare circumstances, it may also include knowingly. I only know that because I was on the pattern, I was the chair of the Pattern Jury Instruction Committee when we wrote this instruction. And we left voluntary, we left knowingly out of the definition that we stuck in the commentary because it's under such rare circumstances that it didn't really seem to fit most of the time. And I don't think it fits here. So in this case, what we're really looking at was it a voluntary or intentional act, right? And in order to show voluntariness or intentionality, don't you have to show that he had the ability to call? And this record is silent on that. It's not completely silent, Your Honor. I don't, there was evidence from Ms. Williams. She was with the bus company. And she mentioned that they have telephones. Now, this was a person from the Rapid City bus station. But she said that they do make phones available for inmates, for people that are coming from FCIs or BOP facilities. They make it available for the calls. Did she say that at the Minneapolis and Sioux Falls stations too? I do not recall whether she said that that was the case there. But I know that she said it about Rapid City. Yes, I understand, Your Honor. He was not provided a phone. No one at the BOP facility said, here's your phone. Use this phone to travel or to make a call. But what they did tell him was, you must call if there are any problems. You're given this furlough. You're given this leeway. And you have to call if you're going to be late, if you run into problems. Mr. Zills explained that thoroughly. And the defendant understood it. The defendant had no questions, which means the defendant didn't ask for a phone. He didn't ask, what if I don't have a phone? In this day and age, Your Honor, I submit that telephones, cell phones are readily available. You go to a bus station 20 years ago, perhaps there was a long distance charge that someone might be concerned with. But in this day and age, telephones are easily accessible and easily available, readily available. All he had to do was find a phone. So essentially, the jury, as part of their fact finding, could just draw as an inference that cell phones are ubiquitous and to obtain one would not be difficult. Indeed, Your Honor. I agree. So just a practical question here. I mean, the furloughs offered to the prisoner, is it a voluntary on the part of the prisoner whether or not he accepts the furlough assignment to Community Alternatives? It is. So the prisoner leaves BOP. Is there anything provided to him in the way of cash or other things? Or is that entirely on the prisoner and his or her family to, I mean, he was gone for several days here. Was there any evidence in the record suggesting that he had financial or had money with him or anything along those lines? I don't know if the record in this case shows it. But I do know that the BOP does provide some amount of money. They provide the tickets for the bus. Or if there are connections, they provide those things to an inmate. I believe there is some traveling money. It's not a large amount. I guess I should have confined it to what's in the record here. But it doesn't sound like that's in the record in this case. I do not believe it is, Your Honor. I apologize for not knowing the answer to that. But I don't think the record here shows that. Your Honors, I don't mean to be glib. But District Judge Kornman from the District of South Dakota used to have a statement, a thing that he said about people who are on supervised release. They're not a part of the come and go as you please club. What you have in this situation was Mr. Little was similar to those supervised release defendants. He had rules that he had to follow. He did not follow those. He showed up late. He let no one know about it. Because the Bureau of Prisons has authority, they need to know where federal inmates are located. They didn't have that information here, and the defendant didn't provide it to them. It was his obligation to do that. His failure to show up meets the second part of the definition of the court's definition. As I outlined toward the end of my brief, it meant that because he failed to return to the facility that he was supposed to be at, failed to return to Bureau of Prisons custody, the willfulness is shown by the fact that he didn't make the phone calls he was required to make. I ask the court to affirm Robert Little's I do have a question. In the instruction that the judge gave on the essential elements of the offense, he said willful failure to arrive or return. And the statute itself simply says, or return. Do you have any thoughts on that? One thought is that there was no objection to it, Your Honor. There were no objections. I believe it's, to the extent that it added a word, it seems to me that it's definitional. It's something that the court put in there, because the court was. Because return means arrive? Because return means arrive at the Bureau of Prisons facility. So it would be returning to Bureau of Prisons custody. The return didn't necessarily. Doesn't necessarily imply that you have to return to the same place. Right. And so I think the judge was just saying, it's returning to Bureau of Prisons custody. Here, it wouldn't be returning to FCI Oxford. It would be returning to custody. That would be by arriving at Community Alternatives of the Black Hills. Anything else? Thank you. Thank you, Your Honors. Thank you. Your Honors, I would like to discuss the matter of the availability of cell phones. I would submit that even had Mr. Little borrowed a cell phone and made a call, he would not have gotten to the halfway house any sooner. He would have been just as late. Also, in this record, there is evidence that Mr. Little is a convicted felon. He stipulated to that. There is a photo of him on page 2 of addendum number 2  And I think you should consider the difficulty of a convicted felon, with his countenance, asking someone to borrow a phone. Also, on Ms. Williams, I believe her testimony was there is a phone in the Rapid City bus station that travelers can use. But Mr. Little, once he's there, he doesn't need to call anyone. He's minutes, 15 minutes by taxi, is what's in the record from CAP. So again, making the phone call doesn't get him there any sooner. I don't disagree with the government that the BOP gets to set the extended limits of confinement if we're talking about geography. But again, this court gets to define what that phrase means. And the testimony at trial, it's the travel schedule. And Mr. Kalderman just said, there's no evidence Mr. Little left that route. So I believe this comes down to willfulness. And a blizzard is proof that Mr. Little did not willfully arrive late. And there is no evidence that he went outside the extended limits of his confinement. So I would again ask this court to reverse and vacate the conviction. I believe I'm out of time. There are no questions. Thank you. Thank you.